UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

EDWARD PEBLO PITTMAN,

                Plaintiff,                        Case No. 1:23-cv-107

v.                                       Honorable Sally J. Berens

RANDEE REWERTS et al.,

                Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 4.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 5.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is

fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent

2

from the defendants. However, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Rewerts, Bowne, Williams, Blair, Nesbit, Woodin, Leonard, and Peterson. The Court will also dismiss Plaintiff's Fourteenth Amendment substantive due process claim against Defendant Haug for failure to state a claim. Plaintiff's Eighth Amendment claim against Defendant Haug will remain in this case.

## Discussion

### I.     Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. The events about which he complains, however, occurred at the Carson City Correctional Facility (DRF) in Carson

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

City, Montcalm County, Michigan. Plaintiff sues Defendants Warden Randee Rewerts, Assistant Deputy Warden Unknown Bowne, Inspector C. Williams, Resident Unit Manager Unknown Blair, Prisoner Counselor Unknown Nesbit, Heather Woodin, LLP, Sergeant Unknown Leonard, and Corrections Officers Unknown Haug and Unknown Peterson.

Plaintiff alleges that on March 7, 2022, he was assaulted by inmate Byrd #590602. As a result, he and Byrd were placed in separate housing units. Plaintiff immediately made multiple requests for protective custody because Byrd was a known active gang member. Plaintiff's requests were denied. On March 8, 2022, Plaintiff sent kites to Defendants Bowne, Rewerts, and Williams seeking protection.

On March 17, 2022, Plaintiff was seen by the Security Classification Committee (SCC), which consisted of Defendants Bowne and Blair. Plaintiff asked to have a Special Problem Offender Notice (S.P.O.N.) placed in his file and to be moved to protective custody, but his requests were denied. Defendant Blair stated that it did not look as if Plaintiff needed protection. Plaintiff sent a kite to Defendant Blair on March 18, 2022, but never received a response.

On July 29, 2022, inmate Byrd went on a scheduled callout to the school building. Upon exiting the school building, inmate Byrd gained access to the yard for Plaintiff's housing unit. The gate officer, Defendant Haug, failed to check inmate Byrd's identification or whether he had a pass. At approximately 8:20 a.m., Plaintiff was released for recreation and walked to the yard, where he was immediately attacked by inmate Byrd. Defendant Haug failed to intervene or call for help. As a result, Plaintiff was stabbed multiple times in the head, face, and neck area. Plaintiff was finally escorted to health care and received medical attention.

On July 31, 2022, Plaintiff informed his family of the attack, and his aunt called Administrative Assistant Mrs. Gonzales (not a party) and made a complaint. Mrs. Gonzales

assured Plaintiff's aunt that she would look into the matter. Two weeks later, on August 12, 2022, Plaintiff requested mental health services because he was experiencing episodes of paranoia related to the attack. Plaintiff made a total of three requests but did not receive a response.

On October 5, 2022, Defendant Leonard placed Plaintiff on non-bond toplock without a misconduct being written on him. Plaintiff was placed in an empty cell without adequate bedding or proper hygiene products. Plaintiff was also deprived of medical attention and his property for 14 days without any explanation.

On October 11, 2022, Defendant Nesbit informed Plaintiff that he was being punished for filing complaints and grievances. Plaintiff asked for his property, adequate bedding, and hygiene products on that date, but his requests were ignored. Plaintiff's requests for medical and mental health treatment were likewise ignored.

On October 14, 2022, Plaintiff wrote a grievance regarding the violation of his due process rights. On October 19, 2022, Defendant Peterson retaliated by writing a misconduct ticket on him, which caused Plaintiff to be terminated from his job.

On October 20, 2022, Plaintiff finally received a response from Defendant Woodin in mental health stating that he had been seen on October 15, 2022. However, Plaintiff states this response was untrue as he had not been seen or evaluated.

Plaintiff asserts claims under the First, Eighth, and Fourteenth Amendments. Plaintiff seeks compensatory and punitive damages.

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels

and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A.    Eighth Amendment

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The

Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "[R]outine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a

7

substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### 1.    Failure to protect

Plaintiff asserts that following the initial assault by inmate Byrd, who was a known active gang member, he sent kites to Defendants Bowne, Rewerts, and Williams seeking protection on March 8, 2022. On March 17, 2022, SCC members Defendants Bowne and Blair denied his request to have a S.P.O.N. placed in his file and to be moved to protective custody. Defendant Blair stated that it did not look as if Plaintiff needed protection.

On July 29, 2022, inmate Byrd gained access to the yard for Plaintiff's housing unit when Defendant Haug failed to check inmate Byrd's identification or whether he had a pass. Consequently, Plaintiff was attacked by inmate Byrd when he exited his cell for yard time. Plaintiff also asserts that Defendant Haug failed to intervene or call for help when he was attacked, which resulted in Plaintiff being stabbed multiple times in the head, face, and neck area.

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer*, 511 U.S. at 833. Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). In particular, because officials have "stripped [prisoners] of virtually every means of self-protection[,]" "officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833. To establish a violation of this right, Plaintiff must show that Defendant was deliberately indifferent to the Plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880–81 (6th Cir. 1988). While a

prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least establish that he reasonably fears such an attack. *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242–43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety").

Plaintiff alleges that he was in danger of being attacked a second time by inmate Byrd. However, Plaintiff concedes that he and Byrd were placed in different housing units following the attack. Plaintiff fails to allege any specific facts showing that the existence of a S.P.O.N. would have prevented the attack. Nor does Plaintiff allege that Defendants Bowne, Rewerts, Blair, and Williams were aware of facts showing that Plaintiff's placement in another unit would not be sufficient protection from a second attack by inmate Byrd. Therefore, Plaintiff's Eighth Amendment claims against Defendants Bowne, Rewerts, Blair, and Williams are properly dismissed.

Plaintiff alleges that inmate Byrd was able to attack him because Defendant Haug failed to check inmate Byrd's identification or whether he had a pass, which gave Byrd access to Plaintiff's unit. Moreover, Plaintiff claims that Defendant Haug failed to intervene or to protect Plaintiff once Byrd attacked, which resulted in Plaintiff receiving multiple stab wounds. Although Plaintiff has by no means proven his claims, at this stage of the proceedings, taking Plaintiff's factual allegations as true and in the light most favorable to him, the Court will not dismiss Plaintiff's Eighth Amendment failure to protect claims against Defendant Haug.

## 2.    Conditions of confinement

On October 5, 2022, Defendant Leonard placed Plaintiff on non-bond toplock without a misconduct being written on him, which resulted in Plaintiff being placed in an empty cell without adequate bedding or proper hygiene products. Plaintiff alleges he was also deprived of medical

attention and his property for 14 days without any explanation. On October 11, 2022, Plaintiff asked Defendant Nesbit for his property, adequate bedding, and hygiene products on that date, but his requests were ignored.

As an initial matter, to the extent Plaintiff intended to allege that Defendants are liable for the conditions of his confinement during the entire 14-day period in question, Plaintiff's allegations only show that Defendant Leonard was involved in Plaintiff's initial placement on non-bond toplock status, and that Plaintiff requested items from Defendant Nesbit on one day. Therefore, Plaintiff has failed to allege sufficient facts to show that the named Defendants were aware of the conditions of his confinement for the entire 14-day period in question.

Moreover, routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.* Plaintiff fails to allege that he was subjected to "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).

Therefore, Plaintiff's Eighth Amendment conditions of confinement claims are properly dismissed.

### 3.    Denial of medical and mental health care

On August 12, 2022, Plaintiff requested mental health services because he was experiencing episodes of paranoia related to the attack. Plaintiff made a total of three requests but did not receive a response. On October 20, 2022, Plaintiff finally received a response from Defendant Woodin in mental health, stating that Plaintiff had been seen on October 15, 2022. However, Plaintiff states this response was untrue as he had not been seen or evaluated.

The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on

11

"the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

Plaintiff's claims regarding the denial of medical and mental health care are vague and conclusory. Although Plaintiff alleges that he requested mental health care on four occasions and that his requests "went unanswered," Plaintiff fails to allege any facts to show that the named Defendants were aware that he had made these requests. (ECF No. 1, PageID.6.) Additionally, with respect to Defendant Woodin's October 20, 2022 response, which noted that Plaintiff had been seen by mental health staff on October 15, 2022, although Plaintiff contends that this statement was untrue, Plaintiff fails to allege any facts suggesting that Defendant Woodin knew that Plaintiff had not in fact been seen by staff on October 15, 2022. Under these circumstances, Plaintiff has failed to allege sufficient to show that Defendants were aware of a substantial risk of

serious harm to him and disregarded it. Further, Plaintiff alleges in a conclusory manner that during the 14-day period in which he was on non-bond/top lock, he "was not allowed medical attention," however, Plaintiff fails to allege any facts regarding why he needed "medical attention," and he fails to allege any facts to suggest that Defendants were aware that he wished to have "medical attention." (*Id.*, PageID.7.) Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under Section 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Plaintiff fails to specify facts showing that his medical and mental health needs were sufficiently serious or that Defendants were aware of a substantial risk of serious harm to Plaintiff should he not receive treatment.

Therefore, Plaintiff's Eighth Amendment claims for the denial of medical and mental health care are properly dismissed.

**B.      Fourteenth Amendment**

**1.      Substantive Due Process**

Plaintiff asserts that Defendants' conduct violated his substantive due process rights under the Fourteenth Amendment, which prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience . . . or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the decencies of

civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)) .

"Where a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989), *overruled on other grounds by Saucier v. Katz*, 533 U.S. 194 (2001)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens, and the Eighth Amendment provides the standard for such searches of prisoners). If such an amendment exists, the substantive due process claim is properly dismissed.

In this case, there are specific constitutional amendments that apply to Plaintiff's claims. For example, the Eighth Amendment provides an explicit source of constitutional protection to Plaintiff concerning his conditions of confinement and medical claims. *See Graham*, 490 U.S. at 394 (citing *Whitley v. Albers*, 475 U.S. 312, 327 (1986)) (rejecting a substantive due process claim where the Eighth Amendment supplies a textual source for prison-condition claims); *Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008) (discussing that because the Eighth Amendment supplies the explicit textual source of constitutional protection for claims governing a prisoner's health and safety, the plaintiff's substantive due process claim was subject to dismissal). Similarly, the First Amendment provides an explicit textual source of constitutional protection for Plaintiff's retaliation claims. Thus, the standard applicable to that source, the First Amendment right to be free from retaliation, and not the more generalized notion of substantive due process should be applied. *Graham*, 490 U.S. at 395; *see also Bell v. Johnson*, 308 F.3d 594, 610 (6th Cir. 2002)

14

(holding that, after *Graham*, the First Amendment standard is the sole source of substantive protection); *Brandenburg v. Housing Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001) ("[A] substantive due process right to free speech is duplicative of [a] First Amendment retaliation claim."). Likewise, the Fourteenth Amendment Procedural Due Process Clause would apply to protect Plaintiff's liberty interest in relation to his misconduct. Consequently, Plaintiff's substantive due process claims will be dismissed.

### 2.    Procedural Due Process

Plaintiff fails to state whether the misconduct ticket he received from Defendant Peterson was a major or minor misconduct. However, even if Plaintiff was convicted of a Class I major misconduct, he fails to state a due process claim.

The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his

sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

Plaintiff states that his misconduct charge resulted in the loss of his prison job. However, such a deprivation does not fall into a category identified in *Sandin* as protected by due process, i.e., an inevitable effect on the duration of Plaintiff's sentence or an atypical and significant hardship. As to the first category, Plaintiff has not alleged a deprivation that will inevitably affect the duration of his sentence. A prisoner like Plaintiff,[2] who is serving an indeterminate sentence for an offense committed after 2000, can accumulate "disciplinary time" for a major misconduct conviction. *See* Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011).

As to the second category, Plaintiff has not alleged that he suffered a "significant and atypical deprivation." In fact, other than the loss of his prison job, Plaintiff fails to allege any deprivation that resulted from his misconduct conviction. Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868

---

[2] Plaintiff is serving sentences for crimes committed in 2019. *See* MDOC Offender Tracking Information System, https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber =364680.

(6th Cir. 2010). The same is true for the loss of yard and phone privileges, the loss of prison employment, and the loss of ability to participate in a religious program, all of which are expected consequences of confinement in segregation.

Federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs under the Fourteenth Amendment. *See, e.g.*, *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (discussing that the Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (prisoners have no constitutional right to rehabilitation, education or jobs); *Canterino v. Wilson*, 869 F.2d 948, 952–54 (6th Cir. 1989) (no constitutional right to rehabilitation); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (no constitutional right to rehabilitative services). Moreover, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991)); *James v. Quinlan*, 866 F.2d 627, 629–30 (3d Cir. 1989)). Consequently, Plaintiff's loss of his prison job did not trigger a right to due process.

Plaintiff also asserts that Defendant Leonard violated his procedural due process rights when he placed Plaintiff on non-bond/toplock status for 14 days without writing a misconduct on Plaintiff. Plaintiff contends that he was placed in an empty cell without adequate bedding or proper

17

hygiene products, and that during this time, he was deprived of medical attention and his property. As stated above, the Fourteenth Amendment protects an individual from deprivation of life, liberty, or property without due process of law. *Bazzetta*, 430 F.3d at 801. To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson*, 545 U.S. at 221. Plaintiff fails to specify why he required medical attention. Nor does the deprivation of adequate bedding and hygiene items for a period of 14 days constitute an atypical and significant deprivation.

With regard to Plaintiff's claim that he was not allowed access to his property for 14 days, courts routinely have recognized such restrictions and have concluded that prisoners do not have a constitutional right to maintain an unlimited amount of property in their cells. *See Friend v. Chapleau*, No. 95-5628, 1995 WL 607835, at *2 (6th Cir. Oct. 13, 1995) (holding that the defendant did not have a constitutional right to possess unlimited amounts of legal property); *see also Smith v. Ortiz*, No. 05-1211, 2006 WL 620871, at *2 (10th Cir. Mar. 14, 2006) (recognizing the distinction between the right to own property and the right to possess it while in prison and holding that, when a prisoner was allowed to send his property to another location, he was not deprived of property); *Cosco v. Uphoff*, 195 F.3d 1221, 1224 (10th Cir. 1999) ("The regulation of type and quantity of individual possession in cells is typical of the kinds of prison conditions that the Court has declared to be subject to the . . . analysis set forth in *Sandin*."); *see also Hinds v. Lewis*, No. 1:19-cv-279, 2019 WL 2223253, at *5 (W.D. Mich. May 23, 2019) (recognizing that a prisoner has no right to possess unlimited property in his cell); *Blanton v. Caruso*, No. 1:10-cv-1187, 2011 WL 202094, at *3 (W.D. Mich. Jan. 19, 2011) (limitation on in-cell property is not atypical and significant). Because Plaintiff has no property interest in keeping his unspecified

personal property in his cell, Defendants have not deprived him of his personal property without due process.

Accordingly, for all of the reasons set forth above, Plaintiff fails to state a procedural due process claim.

### C.     First Amendment

Plaintiff asserts that Defendants Nesbit and Peterson retaliated against him in violation of his First Amendment rights. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff states that he was retaliated against because he filed grievances and complaints. The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not

19

show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). Even seven days' loss of privileges—which includes loss of the rights to use the exercise facilities, to attend group meetings, to use the telephone, to have visitors, to access the general library, and to access the activity room—amounts to adverse action. *Maben v. Thelen*, 887 F.3d 252, 266–67 (6th Cir. 2018) (quoting *Hill v. Lapin*, 630 F3d 468, 474 (6th Cir. 2010)) (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse"). In this case, Plaintiff alleges that he was placed in non-bond/toplock status and was deprived of his personal property, adequate bedding and hygiene items, and that he received a retaliatory misconduct ticket. The Court concludes that Plaintiff has sufficiently alleged that an adverse action was taken against him.

With regard Defendant Nesbit, the Court notes that a defendant's statements or conduct are not evidence of retaliation if the defendant is not the decisionmaker taking the alleged adverse action. *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001); *Shehee v. Luttrell*, 199 F.3d 295, 301 (6th Cir. 1999). In this case Plaintiff asserts that on October 5, 2022, Defendant Leonard[3] placed Plaintiff on non-bond toplock without a misconduct being written on him. On October 10, 2022, Plaintiff asked Defendant Nesbit "to be released from nonbond/toplock due to being unlawfully confined without a misconduct written, but was denied and informed that he was being punished as a result of complaints and grievances that were written and filed." (ECF No. 1, PageID.7.)  However, Plaintiff fails to allege any facts showing that Defendant Nesbit had the authority to release Plaintiff from toplock after he had been placed there by Defendant Leonard.

---

[3] Plaintiff does not appear to be claiming that Defendant Leonard retaliated against him when he placed him on toplock. However, to the extent that Plaintiff may be asserting such a claim, he fails to allege any facts showing that Defendant Leonard was motivated by a desire to retaliate against Plaintiff for engaging in protected conduct.

The mere fact that Defendant Nesbit made retaliatory comments without more is insufficient to show that he took an adverse action against Plaintiff. Therefore, Plaintiff's retaliation claim against Defendant Nesbit is properly dismissed.

With regard to Defendant Peterson, Plaintiff claims that he wrote a grievance regarding the violation of his due process rights on October 14, 2022, and Defendant Peterson retaliated by writing a misconduct on him on October 19, 2022, which resulted in Plaintiff being terminated from his job. However, Plaintiff alleges no facts to suggest that Defendant Peterson knew that Plaintiff had filed the October 14, 2022, grievance.

Temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004). Moreover,

> . . . *Muhammad* does not stand for the proposition that temporal proximity alone is sufficient to create an issue of fact as to retaliatory motive. In *Muhammad* the Sixth Circuit did not resolve the issue, but merely observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Id.* at 418 (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004) (emphasis added). Even if temporal proximity may in some cases create an issue of fact as to retaliatory motive, it would only be sufficient if the evidence was "significant enough." Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create an issue of fact as to retaliatory motive.

*Brandon v. Bergh*, No. 2:08-cv-152, 2010 WL 188731, at *1 (W.D. Mich. Jan. 16, 2010).

In this case, the misconduct ticket was written five days after Plaintiff engaged in protected conduct by filing a grievance. However, Plaintiff fails to allege any specific facts regarding the circumstances of the misconduct, including whether Defendant Peterson was aware of the grievance at the time he wrote the misconduct ticket. Conclusory allegations of unconstitutional

21

conduct without specific factual allegations fail to state a claim under Section 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Because Plaintiff's retaliation claim against Defendant Peterson is entirely conclusory, it is properly dismissed.

<u>**Conclusion**</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Rewerts, Bowne, Williams, Blair, Nesbit, Woodin, Leonard, and Peterson will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss Plaintiff's Fourteenth Amendment due process claim against Defendant Haug for failure to state a claim. Plaintiff's Eighth Amendment claim against Defendant Haug remains in the case.

An order consistent with this opinion will be entered.

Dated:   May 4, 2023                        /s/ Sally J. Berens
                                            SALLY J. BERENS
                                            United States Magistrate Judge